436 A.2d 223

**Janet Anne KLEINTOP**

v.

**Clifford T. KLEINTOP and Diane Kleintop, Appellants.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed Oct. 23, 1981.

William E. McDonald, Lansford, for appellants.

Michael Prokup, Allentown, for appellee.

Before BROSKY, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

This is a direct appeal from an Order entered in a declaratory judgment action [1] creating an equitable lien in favor of appellee against certain residential real estate owned by appellants. Appellants do not quarrel with the finding of an equitable lien, but do here assert that the lower court abused

1. The action was brought under the provisions of the Declaratory Judgments Act of July 9, 1976, P.L. 586, No. 142, § 2, which became effective June 27, 1978. 42 Pa.C.S.A. § 7531 *et seq.* (Pamphlet, 1981). The question of availability of the action must be determined on appeal, *see Greenberg v. Blumberg*, 416 Pa. 226, 206 A.2d 16 (1965); *Stevenson v. Stein*, 412 Pa. 478, 195 A.2d 268 (1963), and we find, in accordance therewith, that the declaratory judgment adjudicating the rights of the parties is a final judgment from which an appeal lies. *See Petition of Baily*, 365 Pa. 613, 76 A.2d 645 (1950); 9 Standard Pennsylvania Practice § 96 (1962).

its discretion in interpreting a contract dealing with the disposition of the proceeds of the realty once "sold", by declaring that the lien becomes "due and payable when any transfer is made of the property." We agree and, therefore, modify the Order entered by the lower court.[2]

The undisputed facts are these: Appellee, Janet Anne Kleintop, and appellant, Clifford T. Kleintop, were husband and wife but were divorced prior to the commencement of the instant action. Clifford T. Kleintop and appellee were the owners, as tenants by the entireties, of certain real estate located at R.D. # 1, Northampton, Northampton County, Pennsylvania. After the real estate was purchased, Clifford and appellee entered into a "Separation and Property Settlement Agreement" (Agreement) dated December 17, 1973. The Agreement was recorded in the Office of the Recorder of Deeds in and for the County of Northampton in Miscellaneous Book Vol. 250, at page 256, on March 31, 1976. The Agreement sets forth, in paragraph No. 10, that:

"10. Wife agrees to convey her interest in the jointly owned real estate located at R.D. # 1, Northampton, Northampton County, Pennsylvania, to Husband for the sum of Eight Thousand ($8,000.00) Dollars. In the event husband sells said real estate, he agrees to give his wife fifty (50%) percent of the net proceeds of said sale in excess of Twenty Thousand ($20,000.00) Dollars after deducting the cost of settlement." (Lower Court Opinion at 1)

The parties were ultimately divorced; thereafter, Clifford titled the real estate in his name and that of Diane Kleintop, his present wife and the other appellant in this action.[3] The appellants have resided at and continue to occupy the premises in question.

**2.** Under the Declaratory Judgments Act, "[a] contract may be construed either before or after there has been a breach thereof." 42 Pa.C.S.A § 7534 (Pamphlet, 1981); *see also* 42 Pa.C.S.A. § 7536.

**3.** 42 Pa.C.S.A. § 7540 (Pamphlet, 1981) ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration. . . ."); 6A Standard Pennsylvania Practice § 123 (1962).

Appellee, concerned that appellants might attempt to sell the property and remove themselves from this jurisdiction without paying her the sum called for in the Agreement,[4] filed a *"PETITION FOR JUDGMENT INVOLVING A LIEN AGAINST REAL ESTATE."* Therein, appellee contended that her interest, as delineated in the Agreement, "constitute[d] a valid and enforceable lien against the said real estate." (RR 4a) After a hearing on the merits of appellee's petition, the Honorable Richard D. Grifo issued an Order on May 23, 1980, holding that an equitable lien existed against the property in question in favor of appellee, based upon his interpretation of paragraph No. 10 of the Agreement. Also, from the date of the recording of the Agreement, the lien became immediately due and payable upon the appellants' transfer, directly or indirectly, voluntarily or involuntarily, of their interest in the real estate.

Both the lower court and appellants agree that paragraph No. 10 of the Agreement is clearly and unambiguously stated. Indeed, the court's Opinion states that: "In accordance with that provision, [i. e., paragraph No. 10,] the Petitioner [appellee] has a lien against one-half of the net proceeds in excess of $20,000.00, minus the cost of settlement, in the event that the property should be sold." (Lower Court Opinion at 2–3)

With the foregoing judicial determination appellants do not disagree. However, they do take issue with that portion of the court's Decree ordering that the lien "shall become

4. As averred in the appellee's Petition to the lower court, such apprehension was predicated upon appellants' informing her that they were intent on moving out of Pennsylvania, selling the property and, if appellee "did not agree to accept a lesser sum than called for in the ... Agreement....", (RR 4a), to "lease" the real estate. Moreover, appellee was not certain as to the status of her interest in the realty, inasmuch as she claimed, in her Petition, that the appellants had led her "to believe ... that [she] had[d only] a claim against proceeds and not a lien against the real estate." *Id.* Thus, due to the controversy existing between the parties as to the correct interpretation of the Agreement, it was appropriate for the lower court to take jurisdiction of the matter and construe the respective rights of the parties, as manifested in the Agreement. *See supra* notes 1 and 2.

immediately due and payable when the respondents ['appellants'] *transfer, directly or indirectly, voluntarily or involuntarily, their interest in the said real estate."* (Emphasis added) (Lower Court Opinion at 4)  Such language, appellants urge, unduly expands the circumstances under which the obligation to pay the appellee is triggered, if aligned against the terms utilized in paragraph No. 10 of the Agreement; additionally, it inhibits a conveyance of the realty, for instance, as a gift or even a devise to beloved children. Furthermore, appellants posit, the lower court's interpretation of the word "sell" to embrace *any transfer* inflates the meaning of the term, which, *in effect*, constitutes a rewriting of the Agreement in contravention of the clear intent of the parties, as embodied in the unambiguous verbiage of the contract.  *See New Charter Coal Co. v. McKee*, 411 Pa. 307, 312, 191 A.2d 830, 833 (1963) ("Absent some legally recognized infringement of the law of contract by one party, the law will not reform a written contract so as to make a contract for the parties that they did not make be[t]ween themselves. . . ."); *Harnish v. Shannnon*, 392 Pa. 419, 141 A.2d 347, 351 (1958) ("It has been said that parties sui juris bind themselves by their lawful contracts, and courts cannot alter them because they work a hardship . . . .   The court will not under the guise of interpretation write a new contract for the parties." [Citations Omitted]).  Appellants thus argue essentially that no liability should attach to them in favor of the appellee, nor should the equitable lien attach, in the event that title to the property passes *without consideration.*

In determining the validity of appellants' averments, we are guided by principles of law which are well settled and beyond dispute.  For example, a property settlement agreement between husband and wife will be enforced by the courts in accordance with the same rules of law applying to determining the validity of contracts generally. 18 P.L.E. Husband and Wives § 21, at p. 47.  Next, when construing an agreement involving clear and unambiguous terms, a court need only examine the writing itself to give effect to the understanding.  *In re Estate of Breyer*, 475 Pa.

108, 115, 379 A.2d 1305, 1309 (1977). Finally, a court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. *Dept. of Transportation v. Acchioni & Canuso, Inc.,* 14 Pa.Cmwlth. 596, 324 A.2d 828 (1974).

It is interesting to note that both the lower court's opinion and appellants' brief cite the very same cases, although obviously reaching different conclusions. Appellee has cited but one case in its brief. None of them is dispositive of the issue before us. Our research, however, has uncovered the case of *Herskovitz v. Vespico,* 238 Pa.Super. 529, 362 A.2d 394 (1976), which we deem to be instructive. In *Herskovitz,* the seller sold certain realty to some buyers for a consideration of $30,000.00. The sales agreement included a proviso that in the event the buyers resold the property within five years for a sum in excess of $35,000.00, "the Buyers agree[d] to divide and share equally with the Seller the sum realized in excess of Thirty Five Thousand Dollars ($35,000.00), after deduction of all real estate transfer taxes incurred by the Buyer." 238 Pa.Super. at 531, 362 A.2d at 395. Subsequently, a public redevelopment authority acquired the property by way of eminent domain proceedings. The buyers received $64,000.00 from the authority but refused to share the monies as contemplated under the initial sales agreement. Thus, in *Herskovitz* we were confronted with the issue of whether acquisition of the Buyers' property by eminent domain proceedings constituted a "sale" under the agreement. After reviewing the applicable case law, and the definitive elements of a sale, i. e., that it "comprehends (1) a transfer from one party to another and (2) a valuable recompense[,]" *id.,* 238 Pa.Super. at 533, 362 A.2d at 396, quoting *John Whiteman & Co. v. Fidei,* 176 Pa.Super. 142, 145, 106 A.2d 644, 645–646 (1954), we held that "the sale of the property . . . to the Redevelopment Authority . . . was a 'sale' within the meaning of the contract. . . ." *Id.,* 238 Pa.Super. at 534, 362 A.2d at 397. Consequently, under *Herskovitz* and *Whiteman,* the absence of either a "transfer" or "valuable recompense" from any transaction renders it something other than a "sale."

■ Applying the aforementioned definition to the case at bar, we conclude that the lower court, in omitting the term "sale" (or an essential element thereof, i. e., the "valuable recompense") from its Order impermissibly broadened the established definition of the word by extending it to include *any transfer* of property. *Herskovitz, supra; Whiteman, supra.* Therefore, consistent with our power to affirm, modify, vacate, set aside or reverse any order brought before us for review, without returning the record for amendment or modification to the court below, 42 Pa.C.S.A. § 706 (Purdon's 1981), we enter here an Order modifying the Decree of the court below, *viz.*:

AND NOW, to-wit, this 23rd day of October, 1981, it is hereby ADJUDGED and DECREED that

An equitable lien exists in favor of Janet Anne Kleintop, based upon the provisions of paragraph No. 10 of the property settlement agreement entered into between herself and Clifford T. Kleintop, from the date of the recording of the Agreement, which shall become immediately due and payable when Clifford T. Kleintop and Diane Klientop sell their interest in the real estate located at R.D. # 1, Northampton, Northampton County, Pennsylvania.

Order of the lower court modified, as set forth in the instant Opinion.